SPRING VALLEY—WESLEY HEIGHTS CITIZENS ASSOCIATION, et al., Petitioners,

v.

DISTRICT OF COLUMBIA ZONING COMMISSION, Respondent,

American University, Intervenor.

No. 02–AA–575.

District of Columbia Court of Appeals.

Argued Nov. 17, 2003.
Decided Sept. 2, 2004.

Joseph E. Sandler, with whom John H. Young, Washington, was on the brief, for petitioner.

Donna M. Murasky, Assistant Corporation Counsel, with whom Arabella W. Teal, Interim Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel at the time the brief was filed, were on the brief, for respondent.[1]

Maureen E. Dwyer and Paul A. Tummonds, Jr., Washington, for intervenor.

Before SCHWELB, FARRELL and GLICKMAN, Associate Judges.

GLICKMAN, Associate J.

American University maintains two campuses in residentially-zoned districts of northwest Washington, D.C. The Main Campus is located on a seventy-six acre plot of land at Ward Circle, where Nebraska and Massachusetts Avenues intersect. The eight-acre Tenley Campus is located a mile away at Tenley Circle, where Nebraska Avenue intersects with Wisconsin Avenue. Because these locations are zoned for residential use, the Zoning Regulations of the District of Columbia require the University to apply for a special exception, which may be granted upon approval of a suitable Campus Plan. *See Levy v. District of Columbia Bd. of Zoning Adjustment,* 570 A.2d 739, 742 (D.C.1990); 11 DCMR § 210 (2002). In 2002, after a prolonged decision-making process that included five public hearings, the District of

---

1. On May 26, 2004, the Office of the Corporation Counsel of the District of Columbia was renamed the Office of the Attorney General of the District of Columbia. *See* Mayor's Order 2004–92, 51 D.C.Reg. 6052 (2004).

Columbia Zoning Commission conditionally approved a Campus Plan that the University proposed for the years 2000–2010. This "2000 Campus Plan" replaced the "1989 Campus Plan" that the Board of Zoning Adjustment (BZA) had approved more than a decade earlier, in 1990. *See Glenbrook Rd. Ass'n v. District of Columbia Bd. of Zoning Adjustment,* 605 A.2d 22, 26 (D.C.1992). Among other things, the new 2000 Campus Plan adjusts the numerical ceiling on the number of students enrolled at the Main and Tenley Campuses and requires the University to implement a program to reduce off-campus parking by its students, faculty, staff, and vendors.

Petitioners are several neighborhood citizens' associations and two local area residents who participated in the proceedings before the Zoning Commission.[2] They ask us to review certain discrete aspects of the Commission's approval of the 2000 Campus Plan. First, although petitioners are satisfied with the enrollment ceiling that the Commission found appropriate, they object to the form in which the Plan expresses that ceiling. Second, petitioners contend that the Commission should have required American University to utilize parking stickers as part of its off-campus parking program, as petitioners and the participating ANCs recommended. Third, petitioners argue that the Commission should have continued a restriction on the direction of loudspeakers at the University's athletic fields and other specific conditions that the BZA had imposed when it approved the 1989 Campus Plan.

■ When the Zoning Commission evaluates a proposed campus plan, it must "evaluate whether [the] proposed use as a college or university, *as a whole,* is likely to become objectionable to neighboring property because of noise, traffic, number of students and other conditions." *Levy,* 570 A.2d at 751 (emphasis in the original); *see also* 11 DCMR § 210.2. "The [Commission's] decision is merely a reasonable forecast or prediction that the plan will not cause objectionable conditions." *Citizens Ass'n of Georgetown v. District of Columbia Bd. of Zoning Adjustment,* 403 A.2d 737, 743 (D.C.1979). The Commission may impose reasonable restrictions in order to minimize the impact of the university on the neighborhood, *see, e.g., Citizens Ass'n of Georgetown v. District of Columbia Bd. of Zoning Adjustment,* 365 A.2d 372, 377 n. 7 (D.C.1976), but in doing so the Commission also should have due regard for the University's needs and prerogatives. *See Glenbrook Rd. Ass'n,* 605 A.2d at 32. Since ANC concerns are entitled by statute to "great weight" in governmental deliberations, the Commission is required to address ANC recommendations in its written decision with "particularity and precision." D.C.Code § 1–309.10(d)(3)(B) (2001).

■ Our review of a Zoning Commission order approving a campus plan is limited to determining whether the decision is arbitrary, capricious, or otherwise not in accordance with law. *See Georgetown Residents Alliance v. District of Columbia Bd. of Zoning Adjustment,* 802 A.2d 359, 363 (D.C.2002); *see also Cathedral Park Condominium Comm. v. District of Columbia Zoning Comm'n,* 743 A.2d 1231, 1239 (D.C.2000). Absent a material procedural impropriety or error of

---

**2.** Petitioners are the Spring Valley–Wesley Heights Citizens Association, the Spring Valley Court Association, the Fort Gaines Citizens Association, Neighbors for a Livable Community, and area residents Robert Herzstein and Priscilla Holmes. Two Advisory Neighborhood Commissions, ANCs 3D and 3E, also participated in the proceedings before the Zoning Commission, but they have not joined in petitioning for review of the Commission's decision.

law, the Commission's decision stands so long as it "rationally flows from findings of fact supported by substantial evidence in the record as a whole." *Georgetown Residents Alliance*, 802 A.2d at 363 (citation omitted).

In accordance with the limited scope of our review, we uphold the Zoning Commission order in this case as rational, supported by substantial evidence in the record, and compliant with legal requirements in all but one respect. We are constrained to remand the case to the Commission for one reason only: to permit that body to explain its reasons in writing for declining to follow one particular recommendation of the ANCs.

### The Ceiling on Enrollment

■ American University's 1989 Campus Plan provided that enrollment at the Main and Tenley Campuses would not exceed 11,233 students for the duration of the Plan. This ceiling was expressed in an exhibit to the Plan as the sum of two components: a base headcount of 10,381 students plus a cap of approximately 8 percent, or 852 students, "to allow for fluctuations in enrollment trends, retention rates and program offerings."

The ceiling in the 1989 Plan covered all students on campus, including students at the University's law school. After the 1989 Plan was approved, however, the University moved its law school to a commercially-zoned site three blocks from the Main Campus. When the University submitted its 2000 Campus Plan, the Zoning Commission concluded that the relocation of the law school necessitated an adjustment of the ceiling in the Plan on student enrollment. Ultimately, the Commission approved the 2000 Campus Plan on the condition that student enrollment over the life of the plan not exceed 10,600 students. This new ceiling is lower than the former ceiling of 11,233 students because the Commission found that law students not enrolled at the Main Campus would continue to use it for some activities and have a corresponding impact on traffic and parking in the vicinity.

Although petitioners argued for an even lower ceiling on enrollment when they appeared before the Commission, in this court they do not challenge the ceiling that the Commission adopted. Petitioners object only to the Commission's decision not to express the ceiling in the 2000 Plan the same way as it was expressed in the 1989 Plan—as a bifurcated number incorporating a base headcount and an allowance for upward fluctuation. Petitioners argue that "the clear result" of this decision "is that the normal, ongoing allowed total student population level will be increased—from the base level of 10,381 in the 1989 plan, to 10,600, in the new plan." Since the Commission found that the ceiling should be revised downward from the 1989 Plan, petitioners argue that the Commission's conclusion does not flow rationally from its findings.

We are not persuaded by petitioners' argument. The proper comparison is with the ceiling of 11,233 students in the 1989 Plan, not with a mere component of that ceiling. The 1989 Plan did not establish the "base headcount" of 10,381 students as a norm to which the University was required to adhere. Rather, the 1989 Plan allowed the University to exceed that base count by up to 8 percent in its discretion. The only true limitation in the 1989 Plan was that the University could not enroll more than the total figure. For the 2000 Plan, that not-to-be-exceeded enrollment figure has been lowered by 633 students. That the Commission decided not to express the new, lower figure in the bifurcated manner of the 1989 Plan makes no material difference. The Commission's decision is rationally related to its findings

and neither arbitrary, capricious, nor contrary to law. We affirm it.

### Off–Campus Parking

The 1989 Campus Plan called for American University to provide 2,490 parking spaces on campus. When the University submitted its 2000 Campus Plan, it proposed to increase that number to 2,959 spaces to satisfy the parking needs of students, faculty, staff, and visitors to the campus. The Department of Public Works advised the Zoning Commission that the University's proposal would be "more than adequate to meet future parking demand on campus" and would "minimize parking spillover in the surrounding residential neighborhood." Supporting this assessment, the Commission made a finding that even at peak demand, 15 percent of the existing on-campus parking spaces and 78 percent of the parking spaces on adjacent neighborhood streets were vacant. The Commission concluded that the University's on-campus parking "is available in sufficient quantity to serve the demand created by students, staff, and campus visitors" and that the increase to approximately 2,900 spaces "is sufficient to handle the increase in parking demand associated with new development over the term of the new plan. . . ."

Off-campus parking by students and other University-related drivers on nearby residential streets nonetheless remained a principal concern of petitioners and ANCs 3D and 3E. Joined by the Office of Planning, petitioners and the ANCs called upon the Commission to require American University to implement a stringent program, similar to programs in effect at other local universities, to "eliminate" University-related parking in the surrounding residential neighborhoods. To facilitate enforcement of such a program, petitioners and the ANCs recommended the use of parking stickers to identify vehicles belonging to students and other University-affiliated persons. In response, American University proposed to adopt a program to discourage off-campus parking that was modeled on a plan that the BZA had approved for use at George Washington University's Mount Vernon Campus.[3] Like the Mount Vernon Campus plan, American University's proposal did not mandate the use of parking stickers as a means of enforcement.

The Zoning Commission found that University-related parking continued to be a problem in the vicinities of both the Main and the Tenley Campuses despite the University's ameliorative efforts. (The Commission did not, however, quantify the magnitude of this off-campus parking "problem."[4]) Concluding that the University "must enhance its parking program" so as "to mitigate adverse impacts associated with" off-campus parking, the Commission conditioned its approval of the 2000 Campus Plan on the University's adoption of a program similar to the Mount Vernon Campus plan. Specifically, Condition No. 7 in the Commission's Order reads as follows:

> 7. The University shall adopt the following program regarding enforcement

---

3. The Mount Vernon Campus plan states that "[George Washington] University shall require all students, faculty, staff, and vendors servicing the Campus to park on the Mount Vernon Campus and shall prohibit, to the extent permitted by law, students, faculty, staff, and vendors from parking on the streets adjacent to and surrounding the Mount Vernon campus." The plan leaves it to the University to implement "a system of administra-

tive action, penalties and fines for violations, which may be adjusted from time to time as needed."

4. Nor did the Commission clarify how its finding of an off-campus parking problem squares with its finding that abundant parking exists on nearby streets even during periods of peak demand.

of student, faculty, staff, and vendor off-campus parking:

(a) The University shall use its best efforts to require all students, faculty, staff, and vendors servicing the campus to park on the campus and shall prohibit, to the extent permitted by law, students, faculty, staff, and vendors from parking on the streets adjacent to and surrounding the campus. The University shall use its best efforts to cause other University-related vehicles to park on the campus. To accomplish these purposes, the University shall have in place a system of administrative actions, contract penalties, and fines (which may be adjusted from time to time as needed), and/or termination of contracts for violations.

(b) Construction employees, contractors, and subcontractors shall by contract be prohibited from parking on residential streets, subject to contractual penalties or termination. Visitors to the campus, including attendees of all conferences, shall be encouraged to use on-campus parking and, where feasible, notified in advance to do so.

(c) For conferences and large special events, the Applicant shall work with area institutions in order to provide additional parking as needed.

When the Commission voted to approve Condition No. 7, its Chairperson observed that the University would be accorded "flexibility" in choosing its enforcement mechanism. Perhaps for that reason, the Commission did not insist on parking stickers to identify University-related vehicles, as petitioners and the ANCs had recommended. The Commission did not explain in its Order why it rejected that recommendation, however. Nor did the Commission provide such an explanation when petitioners moved for reconsideration and reiterated their argument that Condition No. 7 would be ineffective if it did not require University-related vehicles to be identified. In its Order on Reconsideration, the Commission stated only that the issue had been "fully reviewed during the course of this proceeding and appropriately addressed" in the initial Order.

■ Petitioners ask us to overturn Condition No. 7 on two grounds. We are not persuaded by petitioners' first contention, which is that the Commission acted arbitrarily and capriciously in imposing an off-campus parking plan without specifying the means by which it would be enforced. The absence of such prescriptive detail, such as the parking sticker regime that petitioners and the ANCs recommended, does not render the condition ineffective and nugatory as petitioners claim. The University has ample incentive to implement Condition No. 7, for the University remains subject to continuing oversight by the Commission and will face the prospect of serious consequences if it fails to fulfill its obligations. As the Commission provided in another condition of its approval of the 2000 Campus Plan, Condition No. 17:

17. No special exception application filed by the University for further processing under this plan may be granted unless the University proves that it has consistently remained in substantial compliance with Conditions 1 through 16 set forth in this Order. Any violation of a condition of this Order shall be grounds for the denial or revocation of any building permit or certificate of occupancy applied for by, or issued to, the University for any University building or use approved under this plan, and may result in the imposition of fines and penalties pursuant to the Civil Enforcement Act, D.C. Official Code §§ 2–1801.01 to 2–1803.03 (2001).

*See Foggy Bottom Ass'n v. District of Columbia Bd. of Zoning Adjustment*, 791 A.2d 64, 74–75 (D.C.2002) (rejecting the

argument that a traffic regulation condition was "weak and unenforceable" where, *inter alia,* noncompliance with the condition "can be brought to the attention of authorities in connection with, for example, the renewal of the hospital's occupancy permit"). We conclude that it was entirely reasonable for the Commission to state a general condition and to leave "the details and mechanics" of its enforcement to the University. *President & Dirs. of Georgetown College v. District of Columbia Bd. of Zoning Adjustment,* 837 A.2d 58, 77 (D.C. 2003) (holding that Board exceeded its authority by specifying in minute detail how University should enforce an off-campus student affairs program).

■ There is force, however, to petitioners' second contention, which is that the Zoning Commission needed to explain in its Order why it rejected the ANC-supported recommendation that students and others affiliated with the University be required to have parking stickers in order to facilitate the enforcement of Condition No. 7. By statute, a government entity such as the Commission is obligated to give "great weight" in its deliberations to "[t]he issues and concerns raised in the recommendations of" an ANC. D.C.Code § 1–309.10(d)(3)(A); *see Foggy Bottom Ass'n,* 791 A.2d at 76. The statute is quite specific as to the government entity's duties in this regard. "Great weight requires acknowledgment of the [Advisory Neighborhood] Commission as the source of the recommendations and explicit reference to each of the Commission's issues and concerns." § 1–309.10(d)(3)(A). Further,

> [i]n all cases the government entity is required to articulate its decision in

writing. The written rationale of the decision shall articulate with particularity and precision the reasons why the Commission does or does not offer persuasive advice under the circumstances. In so doing, the government entity must articulate specific findings and conclusions with respect to each issue and concern raised by the Commission. Further, the government entity is required to support its position on the record.

§ 1–309.10(d)(3)(B).

The Zoning Commission was mindful of its statutory obligations. We have no reason to doubt the Commission's statement in its Order that it "carefully considered the objections and recommendations of the affected ANCs in formulating the conditions of approval of the 2000 Campus Plan."[5] The Order refers explicitly to the ANC concern that "a stronger program was needed to ensure that students and other University-related drivers would not continue to park on neighborhood streets despite the University's policy to provide paid parking for them." Condition No. 7 is the Commission's direct response to this concern.

In one respect, however, the Commission did not fulfill its statutory obligation. The ANCs expressed the concern that an enforcement mechanism needed to be specified for the University's off-campus parking program. To that end, the ANCs recommended that parking stickers be required for University-related vehicles. The Commission was obligated to "articulate with particularity and precision" why it did not find the ANCs' advice on this score persuasive. The Order does not do

---

5. The record of the proceedings before the Commission confirms that it engaged fully with the ANCs' concerns. The ANCs were active participants, they made numerous written submissions, and the Commission consistently took note of their positions. In its Order, the Commission addressed ANC 3D's concerns in nine separate findings of fact and ANC 3E's concerns in four separate findings of fact.

that; it does not even mention the parking sticker proposal.

It would be premature for us to comment at this juncture on the merit, or lack thereof, of the ANCs' recommendation. We are not prepared to say that imposition of their suggested enforcement mechanism would be a "legally unwarranted intrusion into the University's management prerogatives." *President & Dirs. of Georgetown College,* 837 A.2d at 78. Nor may we substitute our own discretionary judgment for that of the Zoning Commission or "supply a rationale for the agency decision by conjecture from what it did." *Levy,* 570 A.2d at 753. We therefore remand this case for the Commission to address the ANCs' proposal with the statutorily-required particularity.

### Omission of Certain Conditions from the 1989 Campus Plan

In 1990, when the BZA approved American University's 1989 Campus Plan, its Order incorporated the terms of a separate 1989 agreement between the University and several community organizations. Commitments that the University made in that agreement thereby became conditions of the 1989 Plan. In the proceedings on the 2000 Campus Plan, the issue arose as to whether those commitments should be carried forward automatically as conditions of the new Plan. Concluding not, the Zoning Commission ruled that "[a]ny conditions which the parties believe should be included for the next 10 years must be specifically addressed in the record of this case and incorporated by the Zoning Commission in its new order." [6]

Thereafter, in its Order approving the 2000 Campus Plan, the Commission did not find it necessary to incorporate verbatim all of the detailed commitments that American University had made to neighborhood groups in 1989. Illustratively, and of particular (although not sole) concern to petitioners, the Commission modified a provision relating to noise abatement at the University's athletic fields, which are located on the western boundary of the Main Campus. The 1989 Plan specifically required loudspeakers at the athletic fields to "be directed away from the neighboring residences, inward toward the campus." Instead of this precise directional restriction, the Commission required as a condition of the 2000 Campus Plan that loudspeakers "not be permitted unreasonably to interfere with or disturb neighbors' enjoyment of their property or with the University's academic or administrative activities."

Petitioners contend that the Commission acted improperly in eliminating without explanation the directional restriction and other University commitments that the BZA had imposed as conditions in approving the 1989 Campus Plan. We are not persuaded. The Commission was not bound by what the BZA decided in a separate proceeding on an application for approval of a different campus plan. The mere fact that the BZA deemed particular conditions appropriate in 1990 does not mean that the same conditions were necessary over a decade later, let alone that the Commission was without discretion to revise those conditions.[7] We are obliged to af-

---

**6.** The Zoning Commission "expresse[d] no opinion" with respect to whether the University's past agreements "remain in effect as contracts enforceable privately by the parties."

**7.** In *Levy* the BZA issued an order containing a restrictive condition based on specific factu-

al findings and then, on a motion for reconsideration *in the same proceeding,* deleted the condition without revisiting its findings or otherwise providing an explanation. We held that the unexplained elimination of the condition required reversal because the modified order's conclusion was unsupported by, and

firm the Commission's conclusions—i.e., the conditions it chose to impose—so long as they are rational and not arbitrary or capricious. *See, e.g., President & Dirs. of Georgetown College,* 837 A.2d at 67.

That test is met here. Petitioners argue that the University failed to present evidence to justify the omission of a specific directional restriction in the loudspeaker condition that the Commission imposed. But the Commission agreed with petitioners on the necessity for a condition to ensure that the University's loudspeakers would not have an objectionable impact on the neighborhood. The only issue was the best way to formulate that condition. In our view, as with the parking sticker proposal, the Commission was not required to dictate the minute particulars of enforcement. Ordering the University to solve the problem in only one way—to point its loudspeakers in only one direction—may

be too restrictive; it may be unnecessary or have adverse unforeseen consequences. In lieu of a straitjacket approach, the Commission is entitled to insist that the University meet a general level of performance and yet give the University leeway as to how to achieve that level. Such a demand is not toothless; as we said before, the University is exposed to serious consequences if it does not comply.

\* \* \*

For the most part, we uphold the Zoning Commission's conditional approval of American University's 2000 Campus Plan. We remand solely for the Commission to address the off-campus parking recommendation of the ANCs with the particularity required by law.

*So ordered.*

---

indeed, in conflict with, the order's findings of fact. 570 A.2d at 753. We do not find that

to be the case here.